LOWERY vs. KLINE.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

An universal legacy, bequeathed to the concubine of the testator, cannot exceed in amount the one-tenth part of the movables and immovables of the estate of the testator.

The sale of property bequeathed, made by a universal legatee, is liable to be attacked, though the sale was in good faith, if a reduction of the legacy is afterwards decreed.

The plaintiff alleges that she is the mother and forced heir of Edward Lowery, deceased.

That he died, leaving lots, slaves and personal property, worth six thousand five hundred dollars.

That defendant pretending to be universal legatee, under his will, has taken possession of all said property.

That the legacy is null. 1. Because she lived in open concubinage with the deceased. 2. Because Lowery could not dispose of his whole property, having a forced heir.

That J. J. Hall, is in possession of a slave named Joe, worth one thousand two hundred dollars.

She prays that Elizabeth Kline and J. J. Hall be cited, that she have judgment against the former for six thousand five hundred dollars, and the latter for one thousand two hundred dollars, with costs.

The defendant denied the allegations in plaintiff's petition generally.

She denied that the lots mentioned in the petition belonged to Edward Lowery.

She alleged that the only property owned by Lowery, was that mentioned in his will, that it was owned jointly between him and her, and that he had given her his half for the causes stated in his will.

She alleged that the donation, in reality, amounted to nothing, for that as executrix and legatee, she had sold the property for its full value, and that the debts she had paid for the estate, amounted to far more than the value or proceeds of the property.

She annexed a statement of debts paid for the succession, and of the proceeds of the property.

She and Hall both pleaded that plaintiff had no title to the slave Joe.

The claim of the plaintiff for the four lots is abandoned. They were never paid for, and were sold by the sheriff, at the suit of the vendor, for the price.

The district judge declares that the defendant and deceased lived in concubinage; that the declaration in his will, that one-half of the property belonged to her, is a disguised donation, and that this, and the donation of the other half, must be reduced to one-tenth of the value of the personal property.

The will contains the following clauses:

"I acknowledge that the property in possession of myself and Elizabeth Wingard, has been made by our joint industry, and that one half of it justly belongs to her at present.

"Said property consists of two slaves, named Joe and Charity, two horses, a cart, dray and gig, a stock of hogs and household furniture, and a note due from George During, for two hundred and fifty dollars.

"I appoint Mrs. Elizabeth Wingard my executrix, authorising her, in case of my decease, to take possession of the whole of my property, without the intervention of justice, and pay all my just debts.

"I give to my nephew, Arnold Laveau, the sum of two hundred and fifty dollars.

"I give all the remainder of my property to Mrs. Elizabeth Wingard, instituting her my universal legatee, in consideration of the care and trouble she has taken, and the expense she has incurred for me during my long and distressing illness."

*Samuel Wilson*, witness for the plaintiff, testified that he knew the late Edward Lowery during his lifetime. Witness lived some time in the same house with him in the upper faubourg, previous to his removal to the parish of Jefferson; that said Edward Lowery kept house at this time, and lived as man and wife with the defendant, Elizabeth Kline; it was not understood that Lowery and said defendant were married, although they lived together. Witness knows that the deceased owned a negro man and a negro woman, two horses, a cart and a gig; he believes he had also some hogs at the time of his death; that Lowery had been in a bad state of health for a long time previous to his death; that during a considerable time previous to his death, he was in such a state as to require a great deal of nursing and care. Witness, on

visiting the house of Lowery, always saw the defendant <span style="float:right">EASTERN DIS. *April*, 1834.</span>
Elizabeth Kline taking care of him; that said Lowery was
in a very low state of health for eight or nine months previ-
ous to his death; his disease was said to be consumption; that
Lowery was very poor when he first went to keep house
with the defendant Elizabeth Kline. Witness knows that
he borrowed money from her at this time.

LOWERY
*vs.*
KLINE.

Mrs. Kline offered to prove by witnesses, that her ser-
vices rendered Lowery, in nursing and taking care of him
during his last illness, were worth seven hundred and eighty-
five dollars; the testimony was objected to, and after argu-
ment the court refused to admit it; to which opinion of
the court the defendant excepted.

The defendant offered witnesses to prove that the declara-
tions contained in the last will of Lowery, that all the pro-
perty which he and Elizabeth Wingard possessed when he
died, had been acquired by their joint industry, and that
one half justly belonged to her, was true; and that it had, as
alleged in her answer, been principally accumulated by her
industry and economy; and further to prove his declaration,
that he gave all his interest in it to her, for services rendered
him in his last illness, as a remunerative donation for full
consideration, offering to prove by said witness that her ser-
vices were worth more than the interest of said Lowery in
said property; the evidence was objected to, and after argu-
ment, rejected by the court, to which opinion of the court
the defendant excepted.

*Roselius* and *McMillen*, for the plaintiff and appellee con-
tended that:

1. The judgment has error in it, as it does not allow the
plaintiff the slave Charity, which is mentioned in every bill
of sale, as well as the last will of Lowery; and because any
thing is allowed to Kline, under the pleadings in the case,
and under the will, which is shown to be null and void
according to the allegations in plaintiff's petition.

2. There is no proof of the death of the slave Charity.

3. The testimony of Wooley and others going to establish a claim on the part of Kline, in offset or compensation, was improperly admitted; no such claim having been set up by said defendant; and it went to establish title to real property by parol.

4. The testimony of Francis Cannellas, as to the occupation of the house by Kline, after the death of Lowery, was properly received, after Kline had introduced the receipts to show that she had paid the rent.

5. The testimony of Wileau and others, which were offered to show that the services of Mrs. Kline in nursing and taking care of Lawery were worth seven hundred and eighty-five dollars, were properly rejected, as no such claim was set up by the pleadings.

*Preston, contra,* contended as follows:

1. It cannot be denied that the defendant once lived in a state of concubinage with the deceased, but he died of a slow consumption, and eight months before he died or made his will, she was his nurse and not his concubine.

2. The judge, even under the article quoted by him, should have reduced the donation to a tenth of the *whole* estate of the deceased, not to a tenth of his personal property.

3. But the death-bed and most formal solemn declaration of the son that one half of the property mentioned in his will belonged to E. Wingard, was in their joint possession, and made by their common industry, was *true,* and not as his mother alleges, *false.* This results conclusively from the testimony of Samuel Wilson.

4. As to the half which Lowery claimed as his in his will, and donated it to the defendant, except two hundred and fifty dollars, in consideration of the care and trouble she took, and the expense she incurred for him during his long and distressing illness, the donation is valid; it was a remunera-

tive donation. It cannot be reduced below the value of the services. *Code of Practic, arts.* 1500, 1512, 1513.

5. The testimony of Wilson, Casenave and Connelly, on behalf of the plaintiff, shows that Edward Lowery was sick a year before his death with the cnosumption, that defendant constantly nursed and attended him. These were priceless services to a dieing man. They were worth half of *Joe*, for the district judge admits that it required more than the personal property to pay the debts of Edward Lowery, and *Charity* is dead.

6. If the testimony offered by the defendant, and rejected by the judge *a quo*, was properly rejected, no remunerative donation can be proved real. It is sufficient to allege that it is unreal, and the consideration expressed in the donation must fall, because no proof can be admitted against the allegation.

7. The district judge has equally erred in his calculation of the receipts and expenditures of the defendant, as executrix.

8. The judge gives judgment against Hall for the slave Joe, to whom he was sold by Mrs. Wingard, as legatee by a will valid as to third persons, duly proved, and attacked only on account of facts *en pais*, and which could not be known to third persons. To disturb the title to property made by a person having a legal title on the records of our courts of justice, there existing no defect of form, in a *bona fide* purchaser, would destroy all confidence in our courts of justice, and indeed in society itself. It has been the constant course of decision of courts, that a sale made under a will admitted to record as good, is valid, though the will or legacy should afterwards be set aside for defects depending upon proof unknown when admitted to record.

MARTIN, J., delivered the opinion of the court.

The petition states that the plaintiff's son, whose forced heir she is, left several lots, slaves and some personal estate, of which the defendant Kline is in possession, and to which

she claims title as universal legatee, except as to a slave, which is in the possession of the defendant Hall. The legacy is alleged to be null, because her son lived in open concubinage with the legatee, and because she left a mother and forced heir.

By his will, which is annexed to the petition, the plaintiff's son acknowledges, on the 13th of August, 1830, that all the property in his and Kline's possession, was made by their joint exertions, and one half thereof belongs to her. He adds that it consists of two slaves, Joe and Charity, two horses, a cart, dray, gig, stock of hogs, some household furniture, and the note of one Durell for two hundred and fifty dollars. He gives a small legacy to a nephew, and bequeathes the rest of his estate to Kline, in consideration of the care and trouble she took for him, and the expences she incurred during his protracted illness.

The defendant Kline pleaded the general issue, denied that the lots mentioned in the petition were the property of the testator, and that he possessed any property except that which he owned jointly with her, as stated in the will. She averred that the legacy to her was a mere nominal donation, as she had paid, as his executrix, debts of his to a larger amount than had been realised by the sale of the property.

The defendant Hall denied that the deceased had any title to the slave Joe, and he pleaded the general issue.

There was judgment for the plaintiff against the defendants, and for the defendant Hall against the defendant Kline, whom he had called in warranty as the vendor of the slave Joe.

From the the two judgments against her, the defendant Kline, appealed.

The plaintiff has prayed that the judgment be amended, so as to allow her the slave Charity, and by increasing the amount recovered.

The counsel for the appellant has contended that the first judge erred in reducing the legacy to one tenth of the personal property only, and ought to have allowed one tenth of both the real and personal property; and in considering the

EASTERN DIS·
*April*, 1834.

LOWERY
*vs.*
KLINE.

testator's declaration that Kline was the owner of one half of the property of which they were in joint possession, as a disguised donation, and an attempt to elude the provision of the law, incapacitating a concubine from receiving more than one tenth part of the testator's property.

The counsel furthe complains that the first judgment erred in charging her on the warranty with the price she received for Joe, sold to Hall, and complains of overcharges against her, and the reduction of her own bill made.

It has appeared to us that the claim of the appellee to an amendment of the judgment, so as to allow her the price of the slave Charity, cannot be considered, as this slave was claimed from the defendant Hall; and this claim disallowed. As Hall is not a party to the appeal, the decision of the judge below as to that slave, is not properly before us.

We are of opinion that the District Court erred in reducing the universal legacy to one tenth of the *personal* estate; it was only reducible to one tenth of the value of the estate; in the French text, *de la valeur totale des biens.* La. Code, 1468.

An universal legacy bequeathed to the concubine of the testator, cannot exceed in amount the one tenth part of the movables and immovables of the estate of the testator.

The appellant's counsel has further argued, that as she was on the face of the will the universal legatee, Hall, her vendee, acquired a good title to the slave Joe under her sale; a title, which it is contended, cannot be attacked, he being in good faith, by a subsequent claim to the reduction of the legacy. To this the answer is, that the price of the slave is received from her by her co-defendant Hall, who called her in warranty, that as to him not being before us, prevents us from considering the judgment he has obtained against her, and has to the appellee, the merits of the case are against her, as she sold a slave which she would be compelled to restore, if it was in her possession.

The sale of property bequeathed made by a universal legatee, is liable to be attacked, though the sale was in good faith, if a reduction of the legacy be afterwards decreed.

The reciprocal complaints of both appellant and appellee as to overcharges and rejection of items, depend on the evidence offered below, and as it is not very clear that the inferior court was mistaken, it is not our duty to doubt the judgment.

The appellant is entitled to a reduction of the sum receiv-

ed from her by the appellee, of one tenth of the value of the two slaves, or one hundred and ten dollars.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, as far as it concerns the recovery of the appellee from the appellant, be annulled, avoided and reversed, and that the former receive from the latter the sum of one hundred and forty-seven dollars, with interest at 5 per cent. till paid, with costs in the District Court, and that the appellee pay costs in this court.