## CRISWELL vs. SEAY ET AL.

APPEAL FROM THE COURT OF THE SEVENTH DISTRICT, FOR THE PARISH OF

CATAHOULA, THE JUDGE OF THE FIFTH PRESIDING.

The capacity of the donor to give, in relation to donations *mortis causâ*, reference must be had to the time of the donor's death, because it is not until then that the donation takes effect.

So where the husband, having then two children, makes a donation or disposition *mortis causâ*, in his marriage contract of all the property of which he may die possessed, and which he may lawfully dispose of, to *his intended wife*, if she survives him; and his children die first, leaving no forced heirs, at his death *his wife becomes his universal donee*, and is entitled to his estate.

This is an action by the surviving wife to recover from the collateral heirs of her deceased husband, all the property of his estate and of which he died possessed. She claims to be his universal donee, in virtue of a disposition *mortis causâ*, made to her in the marriage contract in case she survived him of all his estate and which he might legally dispose. She shows that he died without any forced heirs, and that she is entitled to his estate under their marriage contract.

The defendants claim as the heirs-at-law of the deceased, being nephews and neices. They also allege that the donation is *contra bonos mores* and null.

There was a judgment for the plaintiff and defendants appealed.

*Phelps*, for the plaintiff and appellee, relied on the following articles of the La. Code, 2305 to 2316, 1730 to 1732, and 1736 to 1739.

2. The capacity of the donor to be tested by his situation at the time of his death; La. Code, 1745-46, 1489.

*Hyams & Purvis*, for the defendant, insisted that the marriage contract although legal in its form, carried within it the seeds of its own reprobation and destruction. The donation was a nullity at the time it was made. It is expressly prohibited. Whatever is done contrary to a prohibitory law is null; La. Code, 11, 12, 19; Idem, 1745-6-7, 1743.

2. The capacity of the donor is to be governed by his condition at the making of the contract. Then he had children living, who were his forced heirs.

3. He could only give a fifth in usufruct; Sirey, 1098.

4. The donation is *contra bonos mores*; La. Code, 188; 17 La. Rep., 129.

*Morphy, J.* delivered the opinion of the court.

This is an action brought to obtain possession of the estate of the late Rezin Criswell, the plaintiff's husband, which was decreed by the Probate Court of Catahoula to belong to her as universal donee of the deceased. The answer admits that defendants were in possession of the property sequestered by the sheriff at the plaintiff's suit, and avers that they are entitled to it being the nearest collateral relations of the deceased, whose brother's children they are; it further alleges that the universal donation under which plaintiff sets up title to this property is *contra bonos mores*, prohibited by law and absolutely null and void. There was a judgment below for plaintiff, from which the defendants have taken this appeal.

As all the defendants were not parties to the decree of the Probate Court recognizing plaintiff as universal donee, and as

those who did appear before that court acted in the capacity of creditors in an application for the administration of the estate of the deceased, it is proper that we should pronounce on the issue placed before us without reference to the said decree.

The statement of facts shows that the plaintiff and Rezin Criswell were married on the 20th of August, 1840, that he died on the 20th of October following; that by his first marriage he had three children who survived their mother; that Isabella Criswell, one of them, died a short time before R. Criswell's last marriage with plaintiff; that the other two died after the second marriage but before their father; that Rezin Criswell left no ascendants or descendants; that the negroes found in the succession of Rezin Criswell (except Dan Johnson) named in the plaintiff's petition were the property of Rezin Criswell's first wife; that he inherited the same from his said children of the preceding marriage; and that all the remaining property found in his succession was acquired by Rezin Criswell after the death of his first wife and previous to his second marriage; that the marriage contract under which plaintiff claims as universal donee of R. Criswell, was executed on the day of her marriage with the deceased but before its celebration. Such are the material facts agreed upon by the parties; the clause in the marriage contract out of which this controversy grows, is in the following terms : "It is mutually agreed and stipulated by the parties that each gives, makes over and donates to the other, all the property of whatsoever kind and description, he or she may die possessed of, to go to the survivor of the marriage, and which may lawfully be given by act of donation, according to the laws of Louisiana ; that is to say, the said Rezin Criswell gives, grants and donates to the said Mrs. Keturah Hollis (in the event of Mrs. Hollis being the survivor) all his property of every kind whatever, that he may die possessed of and which he is or may be entitled by law to dispose of *mortis causâ*, and which portion will be determined by the number of heirs that he may leave at his decease. The

WESTERN DIS.
October, 1841.

CRISWELL
vs.
SEAY ET AL.

said Mrs. Hollis on her part gives, grants and donates to the said Rezin Criswell, in the event of the said Criswell's being the survivor, all the property of every kind and description whatever, that she may die possessed of, under the same restrictions and reservations above specified."

This clause of her marriage contract, under which plaintiff claims has been assailed on various grounds. It is urged that by article 1745 of the Louisiana Code, Rezin Criswell, having two children of his first marriage alive, could donate to plaintiff only the lost child's portion and that only as an usufruct and that in no case could the portion of which she might have the usufruct exceed the fifth part of the donor's estate ; that as at the date of this donation the deceased had no capacity to give nor the plaintiff any to receive more than that fifth in usufruct, the disposition is null and void, as made in contravention of a prohibitive statute. In donations *mortis causâ*, the rule is well settled that in order to determine on the capacity to give or to receive, or on the validity of a disposition in relation to its amount, reference must be had to the time of the donor's death, because it is not until then that the donation is to take effect; La. Code, arts. 1455, 1459 ; 5 Touillier, No. 90. Having left no forced heirs, the universal donation made in favor of plaintiff is as valid as if it had been made in favor of a stranger ; La. Code, 1739 ; had he left forced heirs, the donation would have been reducible, not void ; Idem, 1491 ; 6 La. Rep., 387 ; 5 Touillier, No. 867. The restrictions imposed on the husband's liberality towards his second wife being entirely for the benefit of the children of the first marriage, none but them can complain ; if they all die before the donor, the invalidity of the universal donation vanishes. Toullier in his commentary upon article 1098 of the Napoleon Code, which is nearly similar to ours, says, " The donation made to the second wife or husband will not be subject to reduction, if all the children of the preceding marriage should die a natural or civil death before the donor ; for it is only at his death that the revocation can operate. The prohibition was made in favor

The capacity of the donor to give, in relation to donations *mortis causâ*, reference must be had to the time of the donor's death, because it is not until then that the donation takes effect.

of those children only; it ceases then if they do not exist at the time when the law would produce its effect and come to their aid;" 5 Idem, No. 878. It is said that a mutual and reciprocal donation by marriage contract being irrevocable, it must form an exception to the rule that in donations *mortis causâ* the capacity to give must exist only at the death of the donor; this appears to us a *non sequitur;* the irrevocability of mutual donations *mortis causâ* contained in marriage contracts is a feature which distinguishes them from similar dispositions made in a last will; the latter can be revoked and changed at any time before the donor's death, whilst the former cannot, but this circumstance does not change or alter in other respects the character of the donation which is nevertheless *causâ mortis* and is to take effect only at the opening of the donor's succession. We are therefore of opinion that the children of Rezin Criswell having died before him leaving no other heir than their father, all their property became his, and was at his death as much his as any other property he then owned, and was included in the donation to plaintiff; 7 Martin, N. S., 665. From the terms of the donation it is evident that the deceased intended to give only what would lawfully belong to him at the time of his death and what the law permitted him to dispose of in favor of the donee; how then can it be said that the disposition is void as contrary to any prohibitory law. But it is further contended that the contract is in contravention of good morals and the policy of the law. That it makes the fortune of the second wife depend on the death of the children of her husband; that if they lived, the law made her poor, and if they died the contract made her rich; if considerations of this kind could have the weight and effect contended for by the appellants' counsel, every universal donation or legacy must be declared null; for in every case it will be the interest of the universal donee or legatee that every person from whom the donor or testator is to inherit property should die before him, in order that his estate may be thereby increased. There are a variety of situations in life which may excite in the bosom of

the avaricious secret and criminal wishes and desires, but be- WESTERN DIS.
cause a contract may be calculated to create such evil workings ————————
October, 1841.
in the human breast, we do not feel ourselves authorized to de-          DAVIS
clare it null as contrary to good morals, when it is not repro- POLICE JURY OF
bated by law in express terms but on the contrary is sanctioned          CONCORDIA.
by its provisions; La. Code, 1736, 1737, 1738, 1739, 1045;
15 La. Rep., 562, and the authorities there quoted.

It is therefore ordered, that the judgment of the District
Court be affirmed with costs.